Thank you, Your Honor. Erica Hashimoto from the Georgetown Law Center, the court-appointed counsel for Mr. Bowling. With the court's permission and Mr. Bowling's consent, Clara Cahill, a third-year law student, will be presenting the argument on Mr. Bowling's behalf. Thank you. We look forward to hearing it. May it please the court, my name is Clara Cahill and I represent the appellant, Mr. Thomas Bowling. The Constitution guarantees a meaningful opportunity for release to all non-incorrigible juvenile offenders. Just as sentencing courts must consider a juvenile offender's youth, so too must parole officers. The Virginia Parole Board violated Mr. Bowling's Eighth How do you know they didn't account for it? Your Honor, there's absolutely no evidence in the record that accounts for Mr. Bowling's diminished culpability as a juvenile offender or his greater capacity for change. Did he have the opportunity to present evidence in that regard? He may have, Your Honor, however there was no, it was not clear to him at the time that they would even be considering these mitigating qualities. Don't the denial letters that are attached to the complaint state that the Parole Board considered all the factors which include the facts and, quote, facts and circumstances of the offenses including mitigating and aggravating factors? Yes, Your Honor, but those 14 factors that the Parole Board considers in no way differentiate between juvenile offenders and adult offenders. They don't notice, quote, to the Parole Board that they must consider Mr. Bowling's offense differently from another adult homicide offender, that he has that diminished culpability, and also that there were all other mitigating factors that would be uniquely considered in Mr. Bowling's case as having diminished culpability. For example, he was more... Would you agree, though, I mean the question is they give these categories, right, and they describe the facts and circumstances including mitigating factors, which by definition are mitigating in that particular case, right, and it seems to me your argument is youth is a mitigating factor, should have been considered. One of the problems I've got, and there's probably a couple, but one of them is that that seems to encompass categorically the youth as a mitigating factor around the circumstances of the offense, and if the board tells us they're looking at those things, it's hard for us to ignore what they're telling us they're doing. I get you say this is boilerplate, you should ignore it, but help me understand why, merely because they use boilerplate language, we should ignore what the Commonwealth says they're doing. Your Honor, I would certainly agree with you that the factors as listed allow for a consideration of Mr. Bowling's diminished culpability, but they do not require that. They might consider the fact that he was more susceptible to negative influences... No, no, but it says the board in determining considered, and then list those out, right, I mean it's not saying we could consider these things, I mean this is a factual description of what they have done, and I get you say it's boilerplate, which I consider the mitigating factors of his case as an individual, but that doesn't mean that they took into account his diminished culpability as a juvenile offender. It's possible that they did so. Why should we assume the worst of the Commonwealth, right? It says that they considered the mitigating factors. One of the most significant mitigating factors in his case is his, you know, age at time of offense. Why do we assume the worst of the Commonwealth in deciding that, yeah, they say that they're doing it, this category would plainly encompass that type of information, but we're going to assume the worst and find that they didn't do it? Well, Your Honor, first of all, I would disagree with the fact that they said they considered the mitigating factors of youth. In fact, the Commonwealth had an opportunity to specifically state that they considered the mitigating factors of youth in the affidavit that they submit. They considered, they say they considered the circumstances of the case. He was 17. Is that a circumstance? He was 17 when he committed the crime. Is that a circumstance of the case? That is a circumstance of the case. However, there's more than just observing the fact that Mr. Bolling was 17 years old. It also means taking into account all the things that the Supreme Court listed in Miller and also Montgomery about the unique characteristics of youth. If the parole board is only taking into account he was 17 without taking into account the fact that he had a greater capacity for change and also that he had diminished culpability, then that's not providing him a meaningful opportunity for release as is required under Miller for Mr. Bolling's case. And I think I might have interrupted you. Were you finished? Your Honor, Mr. Bolling had not only a diminished culpability based on his juvenile status, but he also did have this greater capacity for change. And that's not accounted for at all in the parole factors, the 14 parole factors. First of all, these 14 parole factors were promulgated by the parole board. But I'm sorry, so help me understand. You say it's not accounted for, right? But it says, you know, character and conduct and other developmental activities while incarcerated, right? Why isn't that, you know, the change, why doesn't that encompass the change that you're describing? A juvenile's greater capacity for change is different than an adult's. As the Supreme Court recognized in Miller, they have a less fixed character at the time of their offense. And so... But he's being evaluated while he's adult, right? So like that, what Miller in those cases are saying is that you can't just look at the time of 16, you got to look at when they're 45, right? But here, they're looking at him when he's 45 and they're saying, you know, for the last, or however old he is, I don't recall. But over that course of time, this is exactly the type of activities during incarceration that Miller suggested were at issue in this capacity for change, no? That's one element of his change. However, juveniles, because their character was less formed and psychologically they were less developed than adults at the time, the parole board needs to consider his specifically is one area that's unique to juveniles. And it means that they're less likely, based on the development, their development psychologically, to commit the same crimes that they did back when they were juveniles. As juveniles, they're much more susceptible to negative influences, they were much more prone to recklessness, and they were less responsible than an adult offender. The parole board, nowhere in those 14 factors, is required to consider Mr. Bolling's maturity, or is it even mentioned specifically, rehabilitation. The parole factors were promulgated back in 1995 and haven't been updated since 2006, which was four years before the Supreme Court's opinion in Graham and six years before the Supreme Court's opinion in Miller. The Virginia... So considering this as a 1983 case, someone acting under a color of law, I assume the parole board, must have deprived Mr. Bolling of a right secured by the Constitution. What right secured by the Constitution was he deprived of, and how was he deprived of that? Your Honor, there are two rights that he's asserting in this case, both his Eighth Amendment right and his procedural due process right. Particularly under the Eighth Amendment, with Miller and also Montgomery, Mr. Bolling was guaranteed a during his incarceration. And also, Miller and also Montgomery give him a constitutional liberty interest, which the board arbitrarily deprived him of by not considering these mitigating factors of youth. There's no evidence in the record whatsoever that they considered these mitigating factors of youth. Furthermore, although Mr. Bolling has been denied parole since 2005, the letters themselves have never changed after the court's opinion in Graham or Miller to note that they're considering these mitigating factors of youth. The parole board is required to consider these mitigating factors of youth in order to give Mr. Bolling his meaningful opportunity for release, as is guaranteed. Help me under... Oh, I'm sorry. No, go ahead. Help me understand a little bit why you began the argument by making the jump from Graham, which says meaningful opportunity based on current maturity and rehabilitation. And putting aside that that's a non-homicide case and whether that applies in a homicide context, but assume that I accept that premise. How do you get from that meaningful opportunity to this procedural demand that the court did in denying parole? Well, your honor, whether or not the commonwealth has to list out the reasons or not, they're at least required to consider these mitigating factors of youth. And that's really embodied... So tell me why that is. That's embodied, your honor, in the Supreme Court's opinion in Miller and Graham, where sentencing courts are required to consider these mitigating qualities of youth before... Totally that, but they don't... They're not talking about parole, right? I mean, you don't read Graham and Miller as, you know, a set of guidelines for states to engage in parole proceedings, right? They're not procedural hoops that have to be jumped through. It just says a meaningful opportunity. And indeed, in Virginia, maybe that's just geriatric release. That might be sufficient. Without getting to that question itself, how do we get from Miller and Graham meaningful opportunity to meaningful opportunity that includes expressed consideration of youth? Well, your honor, I have two responses to that. First of all, it's important to keep in mind the full phrase that comes from Graham, which is a meaningful opportunity for release based on demonstrated maturity and rehabilitation, which in itself contemplates a later evaluation of that person's growth and maturity and also rehabilitation. Demonstrated means at the time, right? So that means demonstrated means at this point in time. So the consideration of who this person is today, you're saying something different. They need to consider how old he was when he committed the crime, which is a different question, right? Graham tells us you got to look at demonstrated maturity and rehabilitation or whatever the exact phrase is. But that's today. That's in 2019, not at the time of the offense. Precisely, your honor. It's today, 2019, when the parole board is considering Mr. Bowling's parole application, they need to consider whether or not he's demonstrated that maturity and rehabilitation. And as in the 14 factors that the Virginia Parole Board is considering, they don't consider demonstrated maturity or rehabilitation, which was exactly what was promised in Graham and then incorporated in Miller. Is it your position that this evidence is excluded from consideration by a man by the parole board? It's at least not required before the parole board. But is it excluded? Not necessarily, your honor. If he wants to offer evidence of it, is anything that would prohibit him from presenting that testimony or evidence to the parole board? No, your honor. However, Mr. Bowling doesn't have notice at this point that the parole board is specifically going to look at his parole application any differently than any other adult homicide offender. He doesn't necessarily know that he should present evidence that two 40-year-old men... He doesn't know how old he was when he committed the crime? He could submit that, your honor, but it's not required that he submit that. He might not even know that... But if he wants to, he can. Yes, your honor. But there's no evidence, there's nothing to tell him that that is a factor that the parole board is going to consider. So is that where you say the error is? The error is that the parole board is not required to consider his youth... No, it sounds like you say what they need to tell him, which is the same thing, I guess, as saying it's required. Your honor, it would definitely be helpful if they told him, but at the minimum... Well, he has counsel now. He does, your honor, have counsel now, and we're able to inform him. But other inmates have no awareness, based on these parole factors, that any of the mitigating factors of their youth or their greater psychological change will be evaluated by the parole board. Can I ask a quick question, going back to Judge Thacker's earlier question, or I guess I should say premise to her question. What is the remedy that Mr. Bowling is actually seeking here? Because if you go back to his original petition, he seeks both immediate freedom and release and a do-over. And Judge Thacker, I think, suggested by her question that you really only focused on a do-over, which is a 1983 case, not a habeas case. But help me understand, given that Mr. Bowling himself asked for both, how do we evaluate that? Your honor, Mr. Bowling is not seeking immediate release. We believe this is properly construed as a 1983 case, since there's some uncertainty in the law as to whether or not this could properly be a habeas case. Mr. Bowling is seeking reversal of the district court's holding that Graham and Miller do not apply to him and that he didn't have an 8th or 14th amendment right to have these mitigating factors of youth considered by the parole board. And what is the order, I mean, you know, help me understand, what is the order that you would have the district court, or us, I guess we could do it on our own, but if it was remanded to the district court, what does the order look like to the Commonwealth of Virginia? That the district court is requiring the Commonwealth of Virginia to consider mitigating factors of youth, such as diminished culpability and greater capacity for change in their parole decisions. It's really a very small change in evaluating the parole procedure. It's just ensuring that the they are considering the diminished culpability of juvenile offenders and their greater capacity for change, specifically their maturation and their rehabilitation. So if, for example, you suggest the factors that are listed, 14 or however many it is, they could stay exactly the same if the director of VDOC wrote a letter and said, just to be clear to include the items you've described, they actually do include them. That would sort of solve that problem because that would provide notice to everybody. It's really like a court order that the director issued that letter. Your Honor, that would be one solution, yes, Your Honor. Other states have changed their statutes. In fact, seven states have changed their statutes since Graham and Miller to specifically require the consideration of diminished culpability and other things such as the immaturity of the person and their subsequent growth. That's another solution as well. But as far as what this court should hold, it should... You're not suggesting that the district court order the Commonwealth of Virginia to change its statute? I'm not, Your Honor. I'm simply asking this court to hold that under the 8th Amendment and the 14th Amendment, Mr. Bowling was entitled to have the Virginia Parole Board consider the mitigating factors of youth, his diminished culpability and his subsequent maturation. As long as it's clear that the parole board is required to consider those elements of his parole application, then Mr. Bowling would be satisfied. If there are no further questions, thank you, Your Honors. All right, thank you. We'll hear from Ms. Jones. Good morning, Your Honors, and may it please the court. My name is Brittany Jones and I'm here today on behalf of the director. Picking up where the court left off, it seems clear based on counsel's acknowledgement that this is not properly cognizable as a habeas petition, that the question for this court is whether to dismiss or whether to remand back to the district court for reconsideration of this claim as a Section 1983 claim. What we would like to emphasize to the court is that given the significant procedural and substantive differences between Section 1983 litigation and Section 2254 litigation, it is practically impossible for this court to both recharacterize Mr. Bowling's petition and to decide the merits of the claim at this stage. It would require at a minimum this court to remand back to the district court. You think we can't figure it out now? No, Your Honor, it's not that this court can't figure it out, but there are significant differences that sort of haven't been worked out in the process. So, for example, the defendant in this case hasn't been named properly if this is a Section 1983 case. And that matters not only because this is a different agency that would be named under Section 1983, but because of that, the venue actually would be improper. So this case wouldn't be litigated in the Western District on Roanoke. It would actually be litigated in the Eastern District in Richmond. Again, there are also substantive defenses that are available in Section 1983 that are not available in habeas, and because this claim Do you agree, though, that that's all within our discretion? None of these are sort of threshold jurisdictional type questions, that if we were to determine either that they failed to establish that such a right exists, or even if some right did exist, that it was sufficiently satisfied by the procedures engaged in here, that we wouldn't need to reach those issues in the interest of judicial economy. We could just reach that decision. Yes, Your Honor, I think this court could decide that there is no merit to the petition whatsoever, but what I think this court couldn't do is sort of elide the distinction between the way that this case has been litigated in habeas and Section 1983, and provide relief on the prepared to argue the 1983 claim today? No, Your Honor, I'm happy to address this court's questions on the merits to the extent you have any, but we would submit that if this court were interested in re-characterization, that it re-amends back to the District Court in order for it to be properly litigated as a Section 1983 case. Again, there are actual differences in how the pleadings work. All right, so why don't you go to the merits. Tell me what the best evidence is, or what you would rely on first and foremost to suggest that the Commonwealth looked at mitigating factors like age and maturity and rehabilitation. What would you look at and rely on for the conclusion that the parole board did all that they needed to do? Your Honor, I think that Mr. Bowling's parole denial letters indicate precisely what the board considered. It says the board considered all of the 14 factors, including the mitigating circumstances surrounding his offense and the evidence of rehabilitation. The specific factor that they cite is changes in motivation and behavior, and I think that that's just a re-wording of exactly what they want the board to consider in the first instance. I would also point the court to the fact that, again, the inmate has an opportunity to come forward and present evidence to the board. It can reiterate that this was an offense committed when the inmate was 17 years old. Other people also have the opportunity to come forward. Let me understand a little bit about that procedure. What procedural, I don't say rights, but opportunities are provided to each parolee? Do they have the opportunity to appear in person before the parole decision makers? Your Honor, I believe that the interviews are conducted via an in-circuit TV sort of a system. So they're live, but they may not be in person? That's correct. Are they entitled to present any written documentation or be it a letter or evidence that they think is pertinent certificates from the jail or whatever it might be? Yes, Your Honor, they can submit written evidence. They can also have others appear on their behalf. Like character witness? Correct, Your Honor, family members, things of that sort. The parole board considers not just the record, but actually has a record of all of the people who have testified both for and against parole over the course of the inmate's eligibility. They also have before them a description of the offense, which would typically include the age at which the offense was committed in addition to the institutional record and the other things that are necessary. What about the fact that the letters from the parole board haven't really changed at all in the listing of the factors that they consider haven't changed at all even after the Montgomery case when other states have changed the language to account for Montgomery? Well, Your Honor, I think that Virginia could adopt a set of guidelines that explicitly accounted for age, but I think the best evidence that Miller and Montgomery don't require that is actually Montgomery itself. If you look to the opinion in Montgomery, they actually cite to the Wyoming parole statute to make the point that if states want to remediate a Miller problem but don't want to resentence the defendant, they can make them eligible for parole. And Wyoming has a substantively indistinguishable parole system. So it's not clear based on reading Miller or Montgomery that what the court was going to do. And there are good reasons for that. Sentencing decisions are fundamentally different from back-end parole decisions. As some of the discussion this morning illustrated, sentencing decisions are permanent, especially when you're talking about life without the possibility of parole. They are predictive in nature, and they are made when the inmate is a juvenile on the basis of a determination about whether the person will be able in the future, throughout the course of a lifetime, to rehabilitate himself. Parole decisions are necessarily impermanent. They are revisited on an annual basis, and they are backward looking. They are not about whether someone will be able to rehabilitate themselves, but rather whether someone actually has rehabilitated themselves, again, as an adult. So these are very different decisions, and there is no reason to import sentencing decisions into the parole context. I mean, I think another good example of that is if you think about what the court actually required in Miller, even reading Miller as charitably to them as you can, what they say it requires is an incorrigibility determination. If you were really to import that procedural process into the parole context, you would be requiring the parole board to make an incorrigibility determination each and every time it denies parole. And I think just that in and of itself suggests that these are not the same types of decisions. Let me ask a plainly hypothetical question, which is not the system that you have. But imagine the Commonwealth decided that we want to comply to the statute that your colleague relies on as providing a meaningful opportunity based on demonstrated maturity and rehabilitation, right? And so they say, we are issuing a rule, statute, letter, whatever it is, that directs our parole board to only consider where the inmate is today and how they've changed while in prison. But you may not consider parole board whether they were a minor at the time of the offense or not. Would that be a constitutional procedure if the Commonwealth took that approach? Yes, Your Honor, because again, if you look at the language in Graham, and we take issue with reading Graham as imposing really any substantive criteria on the parole board. And certainly on murder inmates, not Graham, which is nonviolent inmates. Correct, Your Honor. But even reading that language and sort of taking it for the most that you can, it would require the parole board to consider demonstrated maturity, but not necessarily the fact that this was a juvenile at the time. Again, we would submit that Virginia actually does account for that because it considers the mitigating circumstances surrounding the crime. And I think it's just a sort of practical matter that would include the fact that the person was young in age at the time the offense was committed. But it does not have to do so under Graham. And again, I think good evidence of that is the Virginia Supreme Court's decision in Angel and the U.S. Supreme Court's decision in LeBlanc, which illustrates that Graham was intended actually to give states discretion in terms of how they came to satisfy the Graham meaningful opportunity in that geriatric release can actually substitute for the traditional parole process. And geriatric release is, of course, more restrictive, not less restrictive, than the traditional process that we're talking about here. These problems you've mentioned with regard to us at this point changing this into a 1983 action, the problems you just gave us, are they in your brief anywhere? Your Honor, we talked specifically about exhaustion. I think given the supplementation of the record, we're not pressing exhaustion specifically. But we do mention the sort of sea change in the law given the PLRA. You mentioned problems with venue and proper parties and different defenses. I couldn't find that. I don't remember reading it. You said it's in there. Yes, Your Honor. We do mention specifically the difference in defendants. And again, I don't know that we necessarily make the point that you would need to remand as opposed to recharacterize and decide the issue here. Or that there's a change in venue. You don't mention that. I don't think venue is specifically mentioned, although the difference in defendant is mentioned. And venue is sort of a necessary corollary to the proper party named in the case. So the point being that there are significant differences between these two types of litigation. So regardless of whether we assume we were prepared to rule in your favor today, you would prefer that we remand? No, Your Honor. I think in the interest of judicial economy, if this court determined that there was no merit to the underlying constitutional claims, it would make more sense to resolve that issue today rather than to send it back for sort of re-litigation or to dismiss and permit Mr. Bowling to refile as a Section 1983 claim, which of course he could do even if this court were to dismiss here on the basis that the claim is not cognizable. And one other sort of minor point that I want to mention, I think there's a little bit of confusion in terms of the phase of the proceeding and the standard that we apply to Mr. Bowling's factual allegations. The other side cites the Iqbal Twombly standard. That's not a standard that applies in habeas. We're talking about habeas motion to dismiss, which is quite different than the typical motion to dismiss. If this were a 1983 motion to dismiss, then of course Iqbal Twombly plausibility would apply. But on habeas it's incumbent upon the defendant to provide evidence in support of his factual allegations. It is not something that we construe in his favor. And in fact typically you would take the state court's determinations as conclusive under Section 2254. I seriously doubt you listened to the argument before you, but it was about determining whether or not a coal miner had a particular disease. In that situation, the decision of the fat miner was attacked because he didn't specifically mention certain evidence. And so the presumption was, well, he must have ignored it. Now here we have a list of these factors. We should presume they did consider these things and they did consider age even though it's not specifically mentioned. Is that what your position is in this case? They considered it even though it's not mentioned because it would be encompassed in the general category? Your Honor, I think a sort of plain text reading suggests that those factors are encompassed in the text of the guidelines. And as my opponent on the other side mentioned, they're at least permissible under the guidelines. But to the extent the court was worried about whether they were mandatory, I think the Virginia Supreme Court has already addressed that question in Angel. And the U.S. Supreme Court has affirmed the same set of circumstances in LeBlanc. But why would we treat those two situations differently? Why wouldn't the same rule apply to examinations of parole eligibility as we do to the existence of deceased when they're being made by fat binders? As far as the presumption of what omission means and what presumption should attach to that. What's different about it? Your Honor, I think a little bit this comes back to what I was mentioning earlier in terms of how this case has been litigated. And in habeas, it is incumbent upon the petitioner to provide evidence. We read his complaint as a challenge to a facial challenge to the guidelines as written, not a challenge asserting that the guidelines are sort of being misapplied in his case. So to the extent he thinks that the guidelines as written don't account for these factors, it would be incumbent upon him to seek discovery, to depose members of the parole board, things of that nature. And if this were a Section 1983 case, again, I think this is another illustration of why these two are very different and why it makes more sense to treat this as a Section 1983 case. Because you would have that opportunity and the Commonwealth would of course have the opportunity to submit evidence. For example, there is a report it's confidential, but a report that the examiner, the parole board considers when it's making these determinations and it has the full record of exactly what was considered in Mr. Bowling's case. It's not in the record here. It was not submitted by either party. The Commonwealth doesn't really have the opportunity in habeas to supplement the record with additional evidence. But if this case were litigated as a Section 1983 case, I think that's something that would be quite relevant for both sides. Wouldn't one other potential answer to Judge Traxler's question sort of turn on the deference that's owed to states in determining their own parole proceedings? The Court recognized that in Graham and a variety of others. And so one distinction might be the difference between a purely federal system where we're reviewing federal actors and a state system where we owe deference to the Commonwealth's determination of its own procedures. Yes, Your Honor. And I think to the extent there's any question about whether these considerations are encompassed within the guidelines, that would be a question of state law. And again, we think that the Virginia Supreme Court has already addressed that in the Angel opinion. But if there was any lingering doubt, we would ask the Court to certify that question because it is something that the state should have the opportunity to pass on in the first instance. If there are no other questions from the Court, we ask you firm the judgment of the District Court. Thank you. Ms. Cahill? Your Honors, Mr. Bowling has plausibly alleged at this point that the Parole Board did not consider the mitigating factors of his youth at the time of his offense. The parole letters never changed between 2005 and 2016 in the parole application that he is challenging in this case, even after Graham and Miller were decided. Furthermore, there is nothing in the factors themselves that specifically mentions juveniles. Explain Angel to me, right? So Angel says, as I recall it, is that this Supreme Court of the Commonwealth saying that the normal parole considerations provide a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation, right? Quoting the Graham standard, right? So you said if the director sends a letter to that effect, it'd be good. Here, why don't we have the Supreme Court of Virginia saying, listen, this provides the meaningful opportunity of Graham. Why is that not the same idea? Well, Your Honor, Angel is specifically a case about the constitutionality of a sentence of life without parole, as long as there was an opportunity for geriatric release. And that's what a majority of the Angel decision is about. However, in part six, in the final paragraph, in one sentence, in the final paragraph of that opinion, the court mentions that the geriatric release process is identical to the parole process, and therefore there is a meaningful opportunity for release. However, the parole factors were never analyzed in any specific meaningful way. It was simply a question as to whether or not that geriatric release program provided the same opportunity as parole. For example, a sentence of life with parole for the opportunity of parole. And so we wouldn't read Angel to be binding on the parole board to require them to consider the mitigating factors of parole. Well, Angel didn't do a really good job, but, you know, it is the Supreme Court and they do say it, right? I mean, they quote Graham. They say that the parole proceedings provide the meaningful opportunity for considering the demonstrated rehabilitation of maturity, right? I mean, they use the exact language from Graham, right? Your Honor, they specifically say that while this statute has an age qualifier, it provides, as the Commonwealth argues, the meaningful opportunity to obtain release. However, once again, it was a question of the equivalency of the geriatric release program versus the parole proceedings themselves. There's no evaluation of the parole factors, which is what Mr. Bolling is specifically challenging in this case. There's no evidence in the record that the parole board did consider this. Even in the affidavit that the board chair submitted, they didn't state that they were considering the mitigating factors of youth, which would have been a perfect opportunity. For these reasons, Your Honors, we ask you to reverse the ruling of the district court. Thank you. We'll step down on Greek Council and then take a short recess. I also want to note that the Georgetown University Law Center is court appointed in this case, and on behalf of the court, we appreciate your work on behalf of Mr. Bolling. This honorable court will take a brief recess.
judges: Stephanie D. Thacker, Julius N. Richardson, William B. Traxler Jr.